* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award.
 * * * * * * * * * * * EVIDENTIARY MATTERS
At the hearing before the deputy commission, plaintiff submitted the following: *Page 2 
 a. Plaintiff's Employment Records, which were admitted into the record, and collectively marked as Plaintiff's Exhibit (1);
 b. Plaintiff's Vocational Records, which were admitted into the record and collectively marked as Plaintiff's Exhibit (2);
 c. Plaintiff's Discovery Responses, which were admitted into the record and collectively marked as Plaintiff's Exhibit (3);
 d. Photographs of Plaintiff's Physical Evidence of the Flexall and Glove, which were admitted into the record and collectively marked as Plaintiff's Exhibit (4) and;
 e. An Incident and Accident Form dated 18 November 2006, which was admitted into the record and marked as Plaintiff's Exhibit (5).
Also at the hearing before the deputy commissioner, defendant submitted the following:
 a. The Written Statement of Ms. Jackie Atkins, which was admitted into the record, and marked as Defendants Exhibit (1);
 b. The Written Statement of Mr. Wayne York, which was admitted into the record and marked as Defendants' Exhibit (2);
 c. The Written Statement of Mr. Tim Hemric, which was admitted into the record and marked as Defendants' Exhibit (3);
 d. A Copy of a Photograph of an Employee Bathroom, which was admitted into the record and marked as Defendants' Exhibit (4);
 e. A Copy of a Photograph of an Employee Bathroom, which was admitted into the record and marked as Defendants' Exhibit (5); *Page 3 
 f. An Incident Report dated 20 March 2007, which was admitted into the record and marked as Defendants' Exhibit (6);
 g. The Written Statement of Mr. Charles Venable, which was admitted into the record and marked as Defendants' Exhibit (7);
 h. A Disciplinary Form, which was admitted into the record and marked as Defendants' Exhibit (8) and;
 i. A Job Description, which was admitted into the record and marked as Defendants' Exhibit (9).
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS 1. All parties are properly before the Industrial Commission, which has jurisdiction of the parties and subject matter.
 2. All parties have bee correctly designated and there is no question as to misjoinder or nonjoinder of parties.
 3. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
 4. On all relevant dates, an employee-employer relationship existed between plaintiff-employee and defendant-employer.
 5. At all relevant times, an employee-employer relationship existed between the parties. *Page 4 
6. On all relevant dates, defendant-employer was self-insured with GAB Robins as the administrator.
7. Plaintiff's date of birth is 12 January 1948 and was sixty years old as of the hearing date before the deputy commissioner.
8. On all relevant dates, plaintiff's average weekly wage was $1087.52, yielding a compensation rate of $719.04.
9. Plaintiff contends that on 18 November 2006, he sustained a compensable injury to his left wrist while lifting a heavy cone of yarn.
10. Plaintiff also contends that on 15 March 2007, he sustained a compensable injury to his back when he fell at work.
11. Defendant has denied these claims.
12. Plaintiff's last day of work with defendant-employer was 15 March 2007.
13. On 1 December 2007, defendant-employer ceased operations at the Cross Creek Apparel plant in Mt. Airy.
14. Plaintiff received short-term disability benefits from a plan fully funded by defendant-employer for the period of 16 March 2007 through 13 September 2007 totaling $21,030.90.
15. At the hearing before the deputy commissioner, the parties submitted the following:
 a. A Packet of Medical Records, which were admitted into the record and marked as Stipulated Exhibit (2);
 b. A Packet of Industrial Commission Forms for I.C. No. 749973, which were admitted into the record and marked as Stipulated Exhibit (3) and; *Page 5 
 c. A Packet of Industrial Commission Forms for I.C. No. 775371, which were admitted into the record and marked as Stipulated Exhibit (4).
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDING OF FACTS
1. Plaintiff is sixty-one years of age and is a high school graduate. From 1968 to 1970, plaintiff served in the United States Army. Plaintiff's entire work history consists of working for defendant-employer at its Mt. Airy plant. Plaintiff's initial position with defendant-employer was as a knitter. Plaintiff later worked as a knitting machine mechanic, lead mechanic, knitting machine supervisor, and knitting machine maintenance manager, the position he held as of 15 March 2007.
2. Plaintiff's regular duties as a knitting machine maintenance manager included supervising thirty-four (34) employees, preparing time and payroll records, making work assignments, creating schedules, trouble shooting on maintenance issues, using computer programs, advising employees of defendant-employer's policies, overseeing machine installations, and repairs and contacting suppliers. Part of plaintiff's normal job duties involved lifting in excess of twenty (20) pounds. Occasionally, the lifting required in the performance of plaintiff's duties was on a repetitive basis.
3. Plaintiff also served as Safety Points Person/Director of Defendant-Employer's Safety Committee. In that capacity, plaintiff participated in monthly safety meetings and investigated workplace injuries. Plaintiff was aware of defendant-employer's policy regarding the reporting of work incidents and completion of reports. *Page 6 
4. Prior to 18 November 2006, plaintiff reported experiencing left wrist pain to defendant-employer. At that time, defendant-employer concluded that plaintiff's symptoms were not work related, but did provide him with a splint to wear at work.
5. On 18 November 2006, plaintiff assigned a knitting job to the first shift knitter Ms. Jackie Atkins, mechanic Mr. Wayne York, and knitting supervisor Mr. Tim Hemric. This job assignment, referred to as creeling, required Ms. Atkins, Mr. York, Mr. Hemric, and plaintiff to lift cones of polyester filament yarn and place the cones on pins attached to the knitting machine. This type of job was normally performed by only a mechanic or knitter, but Ms. Atkins was unable lift these heavier cones alone, so plaintiff and the others assisted.
6. The cones in question contained a type of filament polyester yarn which was significantly heavier than any type of yarn used at the plant prior to 18 November 2006. More specifically, these cones were used to run the first ever fifty (50) pound roll of material at the plant.
7. During the performance of the duties associated with the creeling job in question, plaintiff used his hands to lift and grasp the cones. Plaintiff then climbed a ladder and placed the cones on pins on the knitting machine or bent over to place the cones on pins located lower on the machine. Plaintiff testified that he had to stretch his fingers completely to grasp and lift these heavier cones of polyester filament yarn. At some point during this process, plaintiff experienced a stinging sensation in his left palm. Plaintiff further testified that later, he experienced swelling in his left hand and wrist.
8. Although plaintiff's normal job with defendant-employer required him to occasionally lift more than twenty (20) pounds on a repetitive basis, creeling, knitting, and *Page 7 
setting up knitting jobs were not part of his normal and regular job duties as a machine maintenance supervisor.
9. Mr. Hemric, Mr. York, and Ms. Atkins all testified that plaintiff did not report any hand or wrist symptoms to them on 18 November 2006. Each of these witnesses also testified that plaintiff was honest or not dishonest. During his testimony, plaintiff confirmed that he did not report any symptoms to Mr. Hemric, Mr. York, or Ms. Atkins on 18 November 2006.
10. Plaintiff testified that on the next workday, 20 November 2006, he verbally reported the incident to his manager Mr. Lee Beck and Ms. Tammy Dixon, defendant-employer's workers' compensation claims administrator, investigator, and occupational nurse. Plaintiff further testified that Ms. Dixon gave him Flexall, a topical ointment.
11. Contrary to plaintiff's testimony, Ms. Dixon testified that plaintiff did not report an hand injury until January 2007, even though a written record of each visit to the nurse was not necessarily made. Defendant-employer did not have a policy requiring the recording or notation of all employee visits to the company nurse. Mr. Beck testified that he did not recall plaintiff reporting a workplace injury or related symptoms to him on 20 November 2006.
12. Plaintiff did not complete an incident report regarding the injury he claims he sustained on 18 November 2006 until 1 February 2007. According to plaintiff, the reason for this delay was his belief that his symptoms would resolve, that his condition was not serious, and that he would not require further medical treatment. Plaintiff was reprimanded for not timely completing a written report.
13. In December 2006, the swelling in plaintiff's left hand and wrist decreased, but he developed knots below his fingers. In January 2007, plaintiff's left hand stiffened causing drawing of the left ring finger. Plaintiff also continued to experience numbness and tingling. *Page 8 
14. In early January 2007, plaintiff learned that defendant-employer's Cross Creek plant would be closing that year.
15. Although there is contradictory testimony regarding plaintiff's notice to defendant-employer of an 18 November 2006 workplace injury, based upon the totality of the evidence, the undersigned find plaintiff's testimony regarding the circumstances and reporting of his injury and the related symptoms to be credible.
16. Plaintiff's 18 November 2006 work incident constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. The Full Commission finds that based upon the greater weight of the evidence, on 18 November 2006, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer resulting in an injury to his left hand and wrist.
17. The delay by plaintiff in providing defendants with written notice of his claim of an 18 November 2006 workplace injury is reasonably excused given his initial belief that his condition would resolve and his verbal report to Ms. Dixon. There is insufficient evidence upon which to find that defendants were prejudiced by plaintiff's delay in providing written notice of his claim of an 18 November 2006 workplace injury.
18. On 19 February 2007, plaintiff was examined by Dr. William Johnson, an orthopedic surgeon. At that time, plaintiff reported having a mass in his left palm, inflammation, some ecchymosis (bruising), drawing of his fingers, as well as numbness and tingling in his left wrist. Dr. Johnson diagnosed plaintiff as having Dupuytren's nodules secondary to the 18 November 2006 workplace injury and left carpel tunnel syndrome. Dr. Johnston referred plaintiff for an electrodiagnostic nerve conduction study with Dr. John G. Malone, a neurologist. *Page 9 
Dr. Malone performed the nerve study and EMG on 19 February 2007, which showed that plaintiff had left carpal tunnel syndrome as well as a mild abnormality with the left ulnar nerve at the left wrist. Dr. Malone opined that it was possible for someone with a preexisting carpal tunnel or ulnar nerve abnormality diagnosis to suffer an aggravation or exacerbation of the condition as a result of a stressful event involving the hands.
19. On 19 March 2007, Dr. Johnson performed surgery on plaintiff to remove the nodules and release the left carpal tunnel. Dr. Johnson medically excused plaintiff from work for the period of 19 March 2007 to 25 April 2007 due to his surgery.
20. Dr. Johnson opined to a reasonable degree of medical certainty that plaintiff's Dupuytren's syndrome was caused by his 18 November 2006 injury by accident. Dr. Johnson further opined that plaintiff's pre-existing, non-symptomatic left carpel tunnel syndrome was materially aggravated by his 18 November 2006 injury by accident.
21. On April 11, 2008, Dr. Johnson noted that plaintiff was at maximum medical improvement with regard to the left hand and assigned a five percent (5%) permanent partial disability rating to the left hand.
22. Based upon the greater weight of the credible evidence, the Full Commission finds that plaintiff's 18 November 2006 injury by accident caused plaintiff's left hand Dupuytren's Syndrome and materially aggravated his pre-existing left carpal tunnel syndrome.
23. On 15 March 2007, plaintiff slipped and fell on a wet floor in an employee bathroom near machine number 27 at defendant-employer's plant, striking his neck on the sink and his lower back on the toilet. As a result of this fall, plaintiff experienced the immediate onset of pain in his back and neck. *Page 10 
24. Ms. Susie Smith, a custodian of defendant-employer's, wrote a report on 15 March 2007 in which she asserts that upon exiting the bathroom in question she heard plaintiff say that he had almost fallen. In this report, Ms. Smith further asserts that plaintiff did not appear to be wet or in pain. During her deposition, Ms. Smith essentially related the same information contained in her written report. Although Ms. Smith indicates that plaintiff said that he almost fell, the area in which plaintiff exited the bathroom was quite noisy due to the type of knitting machines nearby.
25. Plaintiff testified that when he exited the bathroom he was probably walking more slowly but he was not carrying himself in a manner in which he appeared to be injured. Plaintiff further testified that while his pants were damp, they were not noticeably wet.
26. After exiting the bathroom, plaintiff walked back to his office where he sent Mr. Beck an email notifying him of his fall in the bathroom. In this email, plaintiff describes having slipped on a wet floor, hitting his neck and back. Based upon the totality of the evidence, the undersigned find plaintiff's testimony regarding the events of 15 March 2007 to be credible.
27. The circumstances of plaintiff's injury on 15 March 2007 constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. The Full Commission finds that based upon the greater weight of the credible evidence, on 15 March 2007, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer involving his neck and back.
28. Prior to 15 March 2007, plaintiff had experienced intermittent symptoms of arthritis in his hands and back for which he received treatment for symptoms by Dr. Catalin Burciu, his family physician. For these symptoms, Dr. Burciu prescribed Tramadol and *Page 11 
Skelaxin. Prior to 15 March 2007, plaintiff was not unable to work or earn wages as a result of these symptoms.
29. Following his fall, plaintiff went home and slept. Upon awakening, the condition of plaintiff's neck and back were worse and he reported to the emergency room of Northern Hospital. At that facility, plaintiff was diagnosed as having an acute myofacial cervical and lumber strain secondary to a fall at work earlier that same day, for which he was prescribed Vicodin and Motrin. Additionally, plaintiff was medically excused from work for what appears to be two (2) days.
30. On 10 April 2007, plaintiff was examined by physicians assistant James Derrick of Tri-County Orthopedics. At that time, plaintiff reported experiencing continued neck and low back pain as the result of having fallen at work on 15 March 2007. Plaintiff was diagnosed as having cervicalgia secondary to cervical strain, lumbar strain with muscle spasm and degenerative disk disease. Physicians assistant Derrick later prescribed physical therapy and his records reflect that plaintiff was experiencing persistent symptoms, including localized and facet tenderness and spasms in the cervical and lumbar regions. Physicians assistant Derrick medically excused plaintiff from work for the period of 10 April 2007 to 29 May 2007.
31. On 29 May 2007, physicians assistant Derrick released plaintiff to return to light duty work for four hours per day. However, defendant-employer would not permit plaintiff to return to work while having restrictions.
32. From April 2007 through the date of the hearing before the deputy commissioner, physicians assistant Derrick continued to treat plaintiff for lumbar and cervical symptoms. These ongoing symptoms lead physicians assistant Derrick to opine that plaintiff's 15 March 2007 injury by accident aggravated his pre-existing, non-disabling degenerative disk disease. *Page 12 
33. On 24 July 2007, plaintiff underwent an independent medical evaluation with Dr. O. Del Curling, a neurosurgeon. Dr. Curling diagnosed plaintiff as having chronic pain secondary to his 15 March 2007 injury by accident and opined that his symptoms of lumbar and cervical pain were consistent with his reports of injuring his neck and back on that date. Dr. Curling also opined that plaintiff's pre-existing degenerative disk disease and arthritis were materially aggravated by his 15 March 2007 injury by accident.
34. Upon the referral of physicians assistant Derrick, plaintiff was examined by Dr. Courtenay S. Whitman, an orthopedic surgeon on 11 February 2008. Following an examination, Dr. Whitman determined that plaintiff's 15 March 2007 injury by accident materially aggravated his pre-existing degenerative disk disease, resulting in increased pain, stiffness and radicular symptoms in the left upper extremity and lower extremities.
35. As part of his treatment of plaintiff, physicians assistant Derrick also prescribed a TENS unit and referred him to Dr. Malone to evaluate the onset of dysesthesios, the impairment of sensitivity, in his left upper extremity. Following an examination, Dr. Malone diagnosed plaintiff as having cervical dystonia and administered chemo denervation with Botox. Dr. Malone opined that plaintiff's pre-existing degenerative disk disease was materially aggravated by his 15 March 2007 injury by accident.
36. Based upon the greater weight of the credible evidence, the Full Commission finds that plaintiff's 15 March 2007 injury by accident materially aggravated his pre-existing degenerative disk disease.
37. Physicians assistant Derrick also referred plaintiff to Dr. Timothy Webster, a psychologist for a psychological evaluation regarding plaintiff's chronic pain diagnosis. Plaintiff continues to treat with Dr. Webster for depression and chronic pain. Dr. Webster opined that *Page 13 
plaintiff's depression was caused by his 15 March 2007 injury by accident and resulting chronic pain.
38. Dr. Whitman and physician assistant Derrick recommended that plaintiff undergo another functional capacity evaluation to determine his current appropriate work restrictions.
39. Dr. Whitman further opined that plaintiff has not reached maximum medical improvement for his back and neck.
40. Plaintiff has actively sought employment, has registered with the North Carolina State Vocational Rehabilitation Services, and the Employment Security Commission, attends state vocational rehabilitation classes, regularly searches for jobs on the internet and in person, and has applied for numerous jobs in a variety of fields. Plaintiff has engaged in a reasonable and diligent job search. Plaintiff has applied unsuccessfully for numerous jobs.
41. Based upon the totality of the credible vocational and medical evidence of record, and as the result of his 15 March 2007 injury by accident and materially aggravated degenerative disk disease, plaintiff has been unable to earn any wages in his former position with defendant-employer or in any other employment for the period of 15 March 2007 through the present and continuing.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 18 November 2006, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer involving his left hand and wrist. N.C. Gen. Stat. § 97-2(6). *Page 14 
2. As the result of his 18 November 2006 injury by accident, plaintiff developed Dupuytren's syndrome and materially aggravated his pre-existing left carpel tunnel syndrome. Id.
3. The delay by plaintiff in providing defendants with written notice of his claim of an 18 November 2006 workplace injury is reasonably excused given his initial belief that his condition would resolve and his verbal report to Ms. Dixon. N.C. Gen. Stat. § 97-22. Additionally, there is insufficient evidence upon which to conclude that defendants were prejudiced by plaintiff's delay in providing written notice of his claim of an 18 November 2006 workplace injury. Id. Accordingly, plaintiff's claim for compensation is not barred. Id.
4. As the result of his 18 November 2006 injury by accident, causing plaintiff's Dupuytren's syndrome which materially aggravated his left carpel tunnel syndrome necessitating surgery, plaintiff is entitled to be paid by defendants permanent partial disability compensation at the rate of $719.04 per week for a ten (10) weeks for the five percent (5%) rating to his left hand. N.C. Gen. Stat. § 97-31(12).
5. On 15 March 2007, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer involving his neck and back. N.C. Gen. Stat. § 97-2(6).
6. Based upon the totality of the credible vocational and medical evidence of record, and as the result of his 15 March 2007 injury by accident and materially aggravated degenerative disk disease, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $719.04 per week for the period of 15 March 2007 through the present and continuing until such time as he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). *Page 15 
Defendants are entitled to a credit against the amounts due for temporary total disability benefits for all short-term disability benefits paid to plaintiff from 16 March 2007 through 13 September 2007. N.C. Gen. Stat. § 97-42.
7. As the result of his 4 November 2006 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with his left hand/wrist surgery, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
8. As the result of his 15 March 2007 injury by accident and materially aggravated degenerative disk disease, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff permanent partial disability compensation at the rate of $719.04 per week for a period of ten (10) weeks for the five percent (5%) rating to his left hand. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendant shall pay to plaintiff ongoing total disability compensation at the rate of $719.04 per week for the period beginning of 15 March 2007 through the present and *Page 16 
continuing until such time as he returns to work or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein and is subject to a credit in the amount of all short-term disability benefits paid to plaintiff from 16 March 2007 through 13 September 2007. N.C. Gen. Stat. § 97-42.
3. Defendants pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his 4 November 2006 injury by accident, subject to the provisions plaintiff is entitled to have of N.C. Gen. Stat. § 97-25.1, including expenses associated with his left hand/wrist surgery, when the medical bills have been approved according to established Industrial Commission procedures.
4. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his 15 March 2007 injury by accident and materially aggravated degenerative disk disease, plaintiff is entitled to have, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures.
5. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
6. Defendants shall pay the costs.
This the 5th day of August 2009. *Page 17 S/_______________________ STACI T. MEYER COMMISSIONER
CONCURRING:
S/_______________________ DIANNE C. SELLERS COMMISSIONER
S/_______________________ CHRISTOPHER SCOTT COMMISSIONER